Entered on Docket
August 01, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: July 31, 2012**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 07-11434DM |
| GREG JAMES VENTURES LLC, d/b/a | ) |
| SAN RAFAEL CADILLAC, SAN RAFAEL | ) Chapter 7 |
| HYUNDAI, SAN RAFAEL HUMMER, and | ) |
| SAN RAFAEL SAAB, | ) |
| | ) |
| Debtor. | ) |
| _____ ) | |
| MEYERS LAW GROUP, P.C., a | ) Adversary Proceeding |
| professional corporation, | ) No. 12-3030DM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DIVERSIFIED REALTY SERVICES, INC., | ) |
| a California Corporation; and JACK | ) |
| KRYSTAL, an individual, | ) |
| | ) |
| Defendants. | ) |
| _____ ) | |

MEMORANDUM DECISION ON MOTION FOR PARTIAL
SUMMARY JUDGMENT ON THE FIRST CLAIM FOR RELIEF

    Clearly some ambiguity exists in the documentation of the DIP loan made by Diversified Realty Services, Inc. ("DRS"). These were discussed at the July 27, 2012 hearing on the Motion for Partial Summary Judgment filed by plaintiff, Meyers Law Group, P.C. ("MLG".

    Among the troublesome inconsistencies found in the operative

agreement and the Santa Rosa court's First Interim Order (Dkt #15) and its Third Interim Order (Dkt #44) are the references to adoption of the terms of the First Interim Order in the subsequent interim orders "as amended by the terms of this order."  But the first two interim orders authorized the debtor to borrow from insiders pursuant to a Debtor in Possession Loan Agreement between it and insiders.  That agreement's critical provision (for the present controversy) is ¶12.13, which subordinated the insiders' loan to professional fees "only to the extent <u>specifically</u> provided in the [First Interim Order]." (Emphasis added).  That order circularly authorized subordinations "as provided in the [Debtor in possession Loan Agreement]."

    The Third Interim Order, while authorizing the debtor to borrow from a different lender on different loan terms and an expanded subordination provision (adding the creditors committee's professional fees and expenses) continues the ambiguity.  It approves the Debtor in Possession Loan Agreement dated November 30, 2007, ("DRS Agreement") which in turn contains virtually the same ¶12.13, adding only the fees and expenses of the committee and requires the professionals to whom DRS is subordinating to provide monthly statements of their billings.  The DRS Agreement also repeats verbatim ¶12.14 of the earlier agreement, stating that there is no subordination by DRS "except to the extent <u>specifically</u> set forth in the [Third Interim Order]." (Emphasis added).

    Here, the contract [the DRS Agreement as supplemented by the Third Interim Order] is ambiguous as to the specifics and scope of the terms of subordination.  It is not, however, ambiguous as to

the parties' intent to subordinate DRS's lien to the fees and expenses of the professionals in the case. This is, simply put, not a material fact in dispute. The other evidence submitted in support of and in response to MLG's motion for summary judgment, construed in the light most favorable to DRS and making all inferences in its favor, shows that DRS agreed to a subordination.[1]

The evidence shows that DRS knew from the outset that MLG wanted protection for its fees and expenses, whether a loan was from the insiders or from someone else. The court knew that too. And when DRS stepped in, not only did MLG put it on notice through e-mail correspondence dated November 27 and 28, 2007, it so advised the court when the debtor filed its Notice of Amendment of Debtor's Motion for Approval of Postpetition Financing and Submission of Proposed Form of Order (Dkt #38). The Notice of Amendment provided:

> **Security:** All amounts owed to the Lender shall be secured by the same liens, and subject to the same exceptions and <u>subordinations (but also including subordination to the Creditors' Committee's reasonable attorneys' fees, with</u>

---

[1] As the Ninth Circuit stated in <u>San Diego Gas & Elec. Co. v. Canadian Hunter Marketing Ltd.</u>, 132 F.3d 1303 (9th Cir. 1997) (internal citations omitted):

> If we find a contract to be ambiguous, we "ordinarily" are hesitant to grant summary judgment "because differing views of the intent of parties will raise genuine issues of material fact." This circuit has not, however, adopted a rigid rule prohibiting reference to extrinsic evidence in resolving a contractual ambiguity on a summary judgment motion. Rather, "[c]onstruing all evidence in the light most favorable to, and making all reasonable inferences in favor of, the non-moving party," we have sought to determine whether the ambiguity could be resolved in a manner consistent with the non-moving party's claim. Only if the ambiguity could be so resolved would summary judgment be denied.

-3-

<u>monthly reporting by all professionals), as presently contained in the [November 5, 2007, Debtor in Possession Loan Agreement]</u>,including without limitation a lien encumbering all assets of the Debtor, whether personal or real property (including all leasehold interests of the Debtor), junior only to existing liens in favor of BofA and Lucien Friere. In particular, the Lender shall have a first security interest in all assets acquired by the Debtor after the commencement of the chapter 11 case except to the extent constituting proceeds of BofA's prepetition collateral, and the Lender's lien on the leasehold interest will be junior only to Mr. Freire's $75,000 lien. The liens securing the Members' Loan will be subordinated to the Lender's security interests.  (Emphasis added).

Under these circumstances and on the record presented, there is no doubt that DRS agreed to subordinate its lien to the unpaid fees and costs of MLG.  Admittedly the specifics were missing, but not the fact of the agreement.  Thus, when DRS received $450,000 and a used automobile worth $14,000 from the debtor on account of its DIP loan, it received that amount subject to MLG's rights under ¶12.13 of the DRS Agreement, the Third Interim Order and Final Order (Docket No. 76).

The court is not persuaded that MLG's failure to provide monthly statements is fatal to its senior position, although its failure to timely account for fees may be pertinent in a determination of damages, particularly given the lack of specificity contemplated by the loan agreement.[2]

MLG is entitled to a declaratory judgment that DRS agreed to subordinate its lien to the fees and expenses of MLG.  The court

---

[2] DRS could have asked for those statements, or it could have sought clarification from the court as to whether the subordination was exonerated by MLG's failure to provide them.  In fact, DRS could have sought the court's declaration that there was no subordination at all, or just what its terms were, because of the inconsistent and ambiguous documentation described above. Its receipt of $450,000 and the used automobile without such a determination was in derogation of MLG's rights.

-4-

will therefore enter partial summary judgment on the First Claim for Relief.  Remaining issues such as damages will be reserved for trial or other disposition of the Second Claim for Relief.

MLG should serve and upload an order granting Partial Summary Judgment on the First Claim for Relief for the reasons stated in this Memorandum Decision.

**END OF MEMORANDUM DECISION**